CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
MAY 15 2006
JOHN F. CORCORAN, CLERK
BY: /s/ HM DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| STEPHAN P. STERLING-EARL,<br>Plaintiff, | )<br>) Civil Action No. 7:06cv00196<br>) |
| v. | ) **MEMORANDUM OPINION**<br>) |
| A. GRAY, et al.,<br>Defendant. | ) By: Hon. Jackson L. Kiser<br>) Senior United States District Judge |

Plaintiff Stephan P. Sterling-Earl, an inmate proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Additionally, Sterling-Earl raises claims in his complaint that this court will construe as a petition for writ of habeas corpus, brought under 28 U.S.C. §2241. Sterling-Earl alleges that the defendants have failed to provide him with adequate medical care, have failed to provide an adequate law library, improperly handled his "sensitive mail", and have refused to afford him the opportunity to make various telephone calls. Sterling-Earl also makes multiple allegations regarding his allegedly unconstitutional detention. Sterling-Earl seeks nearly four million dollars in damages and his immediate release from prison.

Upon consideration of Sterling-Earl's petition, I find that he has failed to state a claim upon which relief can be granted and, therefore, dismiss the complaint without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1). Furthermore, I find that his claims regarding the validity of his confinement must be dismissed for failure to exhaust.

I.

Sterling-Earl alleges that the defendants have failed to provide him with adequate medical care for his chronic, degenerative muscle disease. Sterling-Earl claims that in November 2003, he

was diagnosed with Limb Girdle Muscular Dystrophy ("LGMD"), which causes weakness and a loss of muscle mass in the shoulders, back, hips, and buttocks, and thereby limits mobility in the afflicted's legs. Sterling-Earl admits there is no cure or medicinal treatment for this disease, but claims that the degenerative effects can be combated by regular exercise. In January, 2005, Sterling-Earl underwent hip replacement therapy. Following the surgery, he needed a cane to ambulate, but was walking approximately thirty minutes, three times a day to combat LGMD. Following his arrest in September, 2005, Sterling-Earl was transported to the Albemarle-Charlottesville Regional Jail ("Jail"). The first day there he was forced to stay in a "cold and drafty" cell. However, the following day he was examined by medical personnel. During that exam he discussed his medical history including the LGMD, his hip replacement surgery and need for a cane, his current medications which included blood pressure and pain medicine, and his need for exercise to combat the degenerative effects of LGMD. He was subsequently transferred to a cell in the medical unit where he remained for several days. During that time Sterling-Earl, with the consent of medical staff, continued his walking exercises by making laps around the medical housing unit and by pacing his cell.

When he was released from the medical unit to the general population unit, Sterling-Earl was allowed to retain his cane for walking outside of the housing unit; however, he now alleges that he is getting insufficient exercise because he shares a cell with two other inmates and therefore is unable to pace the cell for exercise. Additionally, he complains his opportunities to exercise are further limited because he is not permitted to have his cane within the housing unit and therefore is uncomfortable walking among other inmates utilizing the Jail's indoor recreation area. Sterling-Earl suggests that he needs an isolated area to walk or should be afforded the opportunity to exercise on a stationary bike to combat the degenerative effects of his medical condition. Sterling-Earl also complains that his mattress is too thin and does not offer sufficient support to treat his condition.

2

Sterling-Earl also claims that on November 16, 2005, he began experiencing vertigo, nausea, and a headache. He claims he put in a "sick slip," but was not immediately seen by a doctor. Then on November 23, 2005, he complains that he slept all day and, after awaking from an awkward position, his legs were asleep and he felt disoriented. He also complains that he had difficulty keeping his balance and eventually just went back to sleep. Then, on November 28, 2005, he submitted another sick call request. Later that day he was examined in the medical unit and diagnosed with a "virus" which did not necessitate further medical treatment. However, Sterling-Earl believed his symptoms were related to his chronic condition, LGMD, and continued to file requests to be examined by a neurologist or another outside physician. On December 22, 2005, Sterling-Earl was informed by institutional staff that an appointment had been scheduled with a neurologist. On February 10, 2006, he was transported to UVA Medical Center and examined by a neurologist who ordered an MRI and suggested to Sterling-Earl that he may have had a "stroke" on November 27, 2005. Sterling-Earl makes no further complaint regarding this issue.

Sterling-Earl further alleges that on January 1, 2006, he lost a filling in one tooth. However, as he was scheduled to be released on or about January 8, 2006, he decided not to seek medical attention at that time. Plaintiff was not released from prison and instead was held over on additional charges, so on January 7, 2006, he made a request to be seen by the institutional dentist. He then alleges that between January and February 1, 2006, he made several "undocumented inquires" about being seen by a dentist. Although plaintiff does not specify when he was examined by medical staff regarding his dental complaints, he admits that on February 8, 2006, he filed a grievance with Dr. Juanita Morris regarding the dentist's refusal to refill his cavity. Sterling-Earl admits the dentist determined the tooth should be extracted, but he refused the offered treatment and instead insisted that the cavity was small and should be refilled. The medical/dental staff declined to refill the cavity,

3

thus, the tooth remained essentially untreated. Thereafter, plaintiff states that he continued to complain of ongoing pain and difficulty eating and drinking due to the missing filling. Plaintiff was again referred to the dentist and was given Motrin for his pain. During his second dental exam, Sterling-Earl was informed that his cavity had spread across the crown of his tooth and the tooth needed to be extracted. Again, plaintiff refused to have the tooth extracted. Instead, he complains that the dentist's diagnosis was ill informed because he did not take x-rays of the plaintiff's tooth and his determination of the proper treatment was extreme and did not take into consideration plaintiff's desire to avoid, at all costs, the extraction of his tooth. Additionally, he states that if the tooth were extracted he would incur approximately $4000.00 in medical bills to restore "function and cosmetic" appeal in that area. He further complains that he is still in pain because the dentist refuses to treat his dental condition.

Plaintiff also laments the inadequacy of the law library. He claims the books are "old and useless," however he admits that there is a computer terminal available on which to conduct legal research through Lexis Nexis. Further, he claims he has been denied the opportunity to notify his bank and insurance company, by telephone, of the possibility that he may be a victim of identity theft. He admits, however, that institutional staff informed him he could contact all these parties by mail.

Additionally, Sterling-Earl claims that prison personnel have opened "sensitive mail" outside of his presence. Specifically, he complains that correctional officers have opened letters from the Internal Revenue Service ("IRS") and the Social Security Administration ("SSA") outside of his presence and have removed from those mailings self-addressed return envelopes. He also complains that mail from the Albemarle General District Court Clerk's Office and the United States District Court for the Western District of Virginia Clerk's Office was opened in his absence.

Sterling-Earl also makes numerous allegations that his current detention is unconstitutional. Those allegations include: he has been denied due process of law while incarcerated because he has been denied a speedy trial on at least two of the charges on which he is being held, the New York warrant on which his detainment is partially based has not been properly heard before a judge, the Commonwealth has not properly executed the New York warrant, at least one of his attorneys was ineffective because she lied to him and provided him with false information, his appointed counsel was ineffective because he refused to respond to Sterling-Earl's phone messages or letters, and personnel within the Jail have refused to provide him with accurate information regarding his outstanding warrants.

## II. 28 U.S.C. § 2241 Petition

Because Sterling-Earl has not yet been convicted on any of the charges on which he is currently detained, he may use 28 U.S.C. § 2241 to obtain review of claims amenable to pre-trial review. See, e.g., Bradley v. 30 th Judicial Cir. Ct., 410 U.S. 484, 489-90 (1973)(permitting review for a speedy trial violation only after the petitioner had repeatedly demanded his right to a speedy trial to the trial court and his matter had not yet been heard). However, a federal court cannot grant a habeas petition unless the petitioner has exhausted all available state remedies, by raising his claims before the trial court with jurisdiction over his criminal matter. See id. If the petitioner has failed to exhaust his state court remedies, the federal court must dismiss the petition. Slayton v. Smith, 404 U.S. 53 (1971).

Sterling-Earl alleges that he has been unlawfully detained, that he has been denied the right to a speedy trial, that he has not received effective assistance of counsel, and institutional staff refuse to answer his questions regarding outstanding warrants, thereby violating his due process rights and

5

justifying his immediate release from prison. Although Sterling-Earl claims that he has written many letters to counsel regarding these issues, he does not claim he has raised any of these concerns before the court, even though he has been before the court on numerous arraignments and bond hearings. Further, he admits that in the one letter he sent to the judge presiding over one of his criminal cases, he only addressed his belief that he had a conflict of interest with appointed counsel, and he admits that he was thereafter assigned new counsel. Accordingly, as Sterling-Earl has failed to exhaust his state remedies, I find that his petition for relief pursuant to 28 U.S.C. § 2241 must be summarily dismissed.

### III. 42 U.S.C. § 1983

A petition may be dismissed under 28 U.S.C. § 1915A(b)(1) if it is clear from the petition that the plaintiff is not entitled to relief. To state a cause of action under § 1983, a plaintiff must establish that he was deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42 (1988).[1]

---

[1] As a threshold matter, the Commonwealth of Virginia, the Albemarle-Charlottesville Regional Jail, the Albemarle County Police Department, the Charlottesville Police Department, the Albemarle County Sheriff's Department, and the Bronx District Attorney's Office are not "persons" and therefore, are not proper defendants in a §1983 action. See Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989)(finding that neither a state nor its officials acting in their official capacities are subject to suit under §1983). However, even if plaintiff was afforded an additional opportunity to amend his complaint to name proper parties, for the reasons stated herein his complaint must be dismissed.

Additionally, judges are absolutely immune from suit for a deprivation of civil rights brought under 42 U.S.C. § 1983 for acts committed within their judicial discretion, even if such acts were allegedly done either maliciously or corruptly. Pierson v. Ray, 386 U.S. 547 (1967); King v. Myers, 973 F.2d 354, 356 (4th Cir. 1992). Sterling-Earl alleges only that defendants Honorable Edward L. Hogshire, the Honorable James E. Kulp, and the Honorable Paul M. Peatross have failed to ensure the enforcement of his constitutional rights during proceedings held before them and have assumedly refused to issue his release from custody. As holding hearings and the choice as to whether to detain

6

### A. Adequate Medical Care

Sterling-Earl alleges that defendants have failed to provide him with adequate medical care in violation of the Eighth Amendment. In order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must present facts to evince that the defendant had actual knowledge of and disregard for an objectively serious medical need. Farmer v. Brennan, 511 U.S. 825 (1994); see also, Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997). "'A serious medical need' is 'one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Shelton v. Angelone, 183 F.Supp.2d 830, 840 (W.D.Va. 2002) (quoting Cox v. District of Columbia, 834 F.Supp. 439, 441 (D.D.C. 1992)). A claim regarding a disagreement between an inmate and medical personnel over diagnosis or course of treatment generally does not state a cognizable constitutional claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Moreover, claims of medical judgment are not subject to judicial review, and mere malpractice or negligence in treatment does not amount to a claim of constitutional significance. Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Estelle, 429 U.S. at 105-06. Additionally, an inmate is not entitled to unqualified access to health care, rather the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977).

---

a criminal defendant prior to trial are clearly normal functions performed by a judge, defendants Hogshire, Kulp, and Peatross are entitled to absolute immunity from civil liability in this action. See Stump v. Sparkman, 435 U.S. 349, 357 (1978).

7

Sterling-Earl alleges that he has been denied adequate medical treatment for chronic LGMD. However, he admits that the day after he arrived at the Jail he was examined by institutional medical personnel and was afforded an opportunity to explain his medical condition and needs, that subsequent to the initial exam he was seen by medical personnel and an outside neurologist when he complained that his symptoms had worsened or changed, and that he has been provided with pain medication to ease the symptoms caused by his chronic condition. Further, Sterling-Earl concedes that after informing medical staff of his need for regular exercise and his dependence on his cane, he was given permission to retain his cane when walking outside of the housing area and was afforded an opportunity to walk regularly in the institutional medical unit. Additionally, he admits that there are now numerous opportunities to walk and otherwise exercise on the recreation yard, even though he feels those opportunities are limited because there is not an isolated walking track nor a stationary bicycle. Finally, he complains that his mattress does not provide sufficient muscular support; however, he admits that after voicing his concerns regarding the mattress he was provided with a second mattresses. Accordingly, it is clear that defendants have acted promptly and thoroughly in continuing treatment of Sterling-Earl's chronic medical conditions, as well as in response to his complaints of new or more severe medical maladies. And, although Sterling-Earl may be dissatisfied with his current treatment plan, changes in his previously prescribed medications, or exercise options which may be limited due to the fact he is incarcerated, this amounts to nothing more than a disagreement between medical staff and inmate as to a proper course of treatment or treatment options, which are not actionable under the Eighth Amendment.

Sterling-Earl also claims that the defendants have been deliberately indifferent to his need for dental treatment. However, he admits that following his initial complaints that he lost a

8

filling, he was examined by medical staff and the institutional dentist, that the dentist determined that the offending tooth should be extracted, but that he refused to have the tooth pulled. Then, after continuing to complain of pain as a result of the missing filling, he was prescribed a pain reliever, was examined by the dentist a second time, was informed his cavity had worsened, and was again advised the tooth should be extracted. But once again, Sterling-Earl refused to have the tooth pulled, as he believes his tooth decay is not so severe as to require extraction and the fact that he will incur considerable expense to have the extracted tooth reconstructed at a later date. As Sterling-Earl admits he has refused the prescribed dental treatment and as he is not entitled to choose his medical treatment, but rather is limited to only that treatment which is medically necessary and not merely desirable, the court finds that his complaints regarding the dentist's or medical staff's alleged failures regarding his dental care do not state a claim of constitutional magnitude. See Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977).

Additionally, to the extent that Sterling-Earl believes that the institutional physician, dentist, or other medical staff have failed to recognize or treat his medical needs, such disagreement does not rise to the level of a federal constitutional violation. Rather, such a claim would arise, if at all, under state medical malpractice laws and does not present a colorable claim under § 1983. See Estelle, supra, at 105-106.

As such, I find that Sterling-Earl has failed to state a viable § 1983 claim for denial of adequate medical treatment. Accordingly, I find that these allegations must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### B. Access to the Courts

Sterling-Earl also complains that the law library has inadequate written materials, that

there is only one computer terminal on which to do legal research through Lexis-Nexis, even though there are almost five hundred inmates, and that he is only afforded one hour a week in the law library. To the extent this claim can be construed as a denial of the right to access to the courts pursuant to the First Amendment, it fails.

Reasonable access by prisoners to both state and federal courts and to communicate with attorneys is a guaranteed right. Ex parte Hull, 312 U.S. 456 (1941); see Procunier v. Martinez, 416 U.S. 396 (1974). However, in addition to showing some interference with this right or some deficiency in the legal resources available to him, an inmate must produce evidence of actual injury or specific harm to some litigation involving a challenge to the conditions of his confinement or the fact of his confinement. Lewis v. Casey, 518 U.S. 343 (1996); Strickler v. Waters, 989 F.2d 1375 (4th Cir. 1993). In fact, in order to state a claim, an inmate must come forward with something more than vague and conclusory allegations of harm. He must point to some specific harm flowing from the alleged deficiency in the legal resources available to him or his ability to communicate with counsel. Lewis, supra.

Sterling-Earl does not allege he has suffered any actual harm. Rather he complains that other inmates may be hindered by unfamiliarity with computer assisted research or limited written research materials. However, he has not suggested that because of these deficiencies he has missed any court imposed deadlines nor that he has been unable to present his claims to the court or to communicate with counsel. As such, Sterling-Earl has failed to demonstrate any actual injury or specific harm resulting from any action on the part of the defendants relating to his right to access the courts. Therefore, this claim will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

10

### C. Telephone Access

Sterling-Earl also complains that prison officials refuse to grant him permission to use the telephone to call his bank and insurance company and inform those companies that he may be the victim of identity theft; however, he has been advised that he may contact any party he desires by mail. Although prisoners have a right to communicate with parties outside of the prison, inmates do not have an unqualified right to use the telephone. Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Lopez v. Reyes, 692 F.2d 15, 17 (5th Cir.1982) (holding that inmates have no right to unlimited telephone use); see also; Pope v. Hightower, 101 F.3d 1382, 138485 (11th Cir.1996) (finding that the inmates may be limited to only calling those parties on a pre-approved calling list of no more than 10 persons); Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir.1994); Benzel v. Grammar, 869 F.2d 1105, 1108 (8th Cir.1989); Martin v. Tyson, 845 F.2d 1451, 1458 (7th Cir.1988) (holding that inmates may be reasonably limited to using the telephone on alternate days); Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir.1986) (allowing that in light of reasonable security concerns, the prison may limit a pretrial detainee's access to the telephone). Moreover, in light of the fact that plaintiff could contact any party he desired by mail and as he has produced nothing to support his allegation that he is the victim of identity theft, the court finds that the institution could have reasonably determined that the plaintiff did not have an immediate need to contact a private corporation and/or financial institution by telephone. See Hodges v. Virginia, 871 F.Supp. 873, 876 (W.D.Va. 1994), rev'd on other grounds, Montcalm Publ. Corp. v. Beck, 80 F.3d 105 (4th Cir. 1996)(finding that security, discipline, order, public safety, and rehabilitation interests need no defense). Accordingly, I find this claim must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

11

### D. Mail

Sterling-Earl alleges that institutional officials have opened "sensitive mail" from the IRS, the SSA, the Albemarle-General District Court Clerk's Office, and the United States District Court for the Western District of Virginia Clerk's Office. Plaintiff alleges that he has been informed by prison officials that general, unmarked correspondence from these institutions does not qualify as legal mail, and thus, can be opened and examined in his absence. As Sterling-Earl admits that institutional officials have not opened any communications from counsel, it is clear that they have in no way hindered his ability to communicate confidentially with counsel. See Wolff v. McDonnell, 418 U.S. 539, 577 (1974); Crowe v. Leeke, 550 F.2d 184, 188 (4 th Cir. 1977). Therefore, these allegations do not raise a claim under the Sixth Amendment.

Additionally, to the extent he alleges that opening mail from the IRS, the SSA, the Albemarle-General District Court Clerk's Office, and the United States District Court for the Western District of Virginia Clerk's Office in his absence violates his First Amendment rights, it too fails. A prison policy that impinges on an inmate's constitutional right is valid "if it is reasonably related to legitimate penological interests." Altizer v. Deeds, 191 F.3d 540, 547 (1999), citing, Turner v. Safley, 482 U.S. 78, 89 (1987). The Fourth Circuit has expressly found that the that the prison had a legitimate security interest in opening and examining outgoing mail. Altizer, 191 F.3d at 549 (1999). The court can easily conceive of legitimate penological interests in ensuring that no contraband or harmful substance comes into the prison through the mail, thus the opening of "sensitive," but non-legal mail does not raise a claim of constitutional magnitude.

Furthermore, even assuming that general correspondence from the IRS, the SSA, the Albemarle-General District Court Clerk's Office, and the United States District Court for the Western District of Virginia Clerk's Office qualifies as legal mail, opening this mail outside of

12

his presence fails to state a claim for relief. Sterling-Earl does not allege this mail was marked as confidential legal mail, accordingly he was not entitled to be present while it was opened and inspected. See United States v. Stotts, 925 F.2d 83, 88-90 (4th Cir. 1991). Moreover, he has not alleged that any delay in his receipt of correspondence from these institutions or that the missing, self-addressed envelopes from the IRS or SSA caused any actual harm or interfered with his ability to communicate with these parties. White v. White, 886 F.2d 721, 724 (4th Cir. 1989)(finding to state a claim based on delay or non-delivery of legal mail, an inmate must allege that he suffered actual adverse consequences as a result of the delay or that the non-delivery deprived him of meaningful access to the courts). According, I find this claim must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### F. Unlawful Confinement

To the extent Sterling-Earl seeks damages for his allegedly unlawful confinement, Sterling-Earl is advised that although he may seek damages under 42 U.S.C. § 1983, such an award can only be made after a only after a showing that his confinement was in fact unlawful. Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). Accordingly to succeed on such a claim, Sterling-Earl must prove that his current confinement was either declared invalid by a state tribunal authorized to make such a determination or called into question by a federal court's issuance of a writ. See id. As Sterling-Earl has not established that his confinement has been declared invalid by a state tribunal and as this court has declined to issue a § 2241 writ, I find that this claim must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

13

## IV. Conclusion

Sterling-Earl is advised that he may appeal this court's dismissal of his § 2241 claim, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a circuit court of appeals justice or this court issues a certificate of appealability, pursuant to 28 U.S.C. §2253(c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. §2253(c)(1). Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." Therefore, this court declines to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If petitioner intends to appeal and seek a certificate of appealability from the Circuit Court of Appeals for the Fourth Circuit, his first step is to file a notice of appeal with this court within 60 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

Further, as to Sterling-Earl's § 1983 claims, he is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this Memorandum Opinion and accompanying Order to plaintiff and to counsel of record for the defendants, if known.

**ENTER:** This 15th day of May, 2006.

Senior United States District Judge